UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X  **Docket#**
JOSHUA RODRIGUEZ,                 : 23-cv-08313-RER-LB
                                  :
            Plaintiff,            :
                                  :
      - versus -                  : U.S. Courthouse
                                  : Brooklyn, New York
LESLIE DUNN, et al.,              :
                                  : April 9, 2024
            Defendants            : 10:11 a.m.
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PRE-INITIAL
MOTION CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES CHIEF MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiff**:          **Joshua Rodriguez, Pro Se**
                                811 Flushing Avenue, Apt. 16D
                                Brooklyn, NY 11206

**For the Defendants**:         **Thomas Lai, Esq.**
                                **Alfred Miller, Jr., Esq.**
                                New York City Law Department
                                100 Church Street, Suite 2-189
                                New York, NY 10007

**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

THE CLERK:  Civil Cause for Initial Conference, docket number 23-cv-8313, *Rodriguez v. Dunn, et al*.

Will the parties please state their names for the record?

MR. RODRIGUEZ:  Good morning, your Honor. Joshua Rodriguez, plaintiff.

MR. LAI:  For the Office of Corporation Counsel, the City of New York, Assistant Corporation Counsel Thomas Lai.

MR. MILLER:  And Alfred Miller, Jr. also on behalf of the City of New York.  Good morning, your Honor.

THE CLERK:  The Honorable Lois Bloom presiding.

THE COURT:  Good morning, Mr. Rodriguez, Mr. Lai, and Mr. Miller.  I hope everybody is well.

This is a conference in your civil rights case. I'm not calling it the initial conference, Mr. Rodriguez, because we haven't even gotten them to respond to the complaint yet.  So part of the reason why I wanted to have the conference is I can tell from reading your complaint that you're going through a lot and I can tell this is about your most important thing which is your relationship with your daughter.  So I'm sorry for everything that's going on.  I can't change ACS.  I can't change what's going on.  You wanted to be heard.  Go

3

Proceedings

1    ahead.

2         MR. RODRIGUEZ:  It's based on defamation of

3    character, not pain and suffering.  One second.  These

4    are things you don't do to people.  I wouldn't go as far

5    as making attempts that I did.  I've made a lot of

6    chances of trying to fight for my child for her safety

7    and it seems like ACS doesn't care about children

8    nowadays due to the complaint and a lot of things that

9    I've seen of doing research on, ACS removing children

10   from people and not having a full claim of doing the

11   actual emergency removal with children.

12         It's been four years.  I asked for help.  I'm

13   not getting any help.  I said I didn't want to take it

14   this far.  It's only one way they'll listen.  And I said

15   I have to make some complaints on them because they keep

16   making stuff up.

17         I've requested records in the past and there's

18   a lot behind it.  I've tried my best to deal with them

19   and there's things you don't do to people and I'm hurt a

20   lot behind it.  I missed out on a lot of time with my

21   child.  My child's been (indiscernible) problems.  I

22   can't ask for their help because they're not here to help

23   me.  They're here to help the mother on behalf of a past

24   case that I can't enclose on, I can't disclose about it

25   right now.

4

Proceedings

1      So it's hurt, I'm hurt, and this is the reason
2  what brings me here.
3      THE COURT:  Mr. Rodriguez, I understand what
4  you're saying to me.  I can't even imagine how difficult
5  this situation is.
6      Look, I'm going to be very straight with you.
7  What's left in this case is not about your daughter and
8  ACS, it's about this Leslie Dunn, one person, and
9  Detective Savage, one person.  It's not about the whole
10  situation.  And I do hear your pain.  I do.  And I
11  understand that, you know, it's your child and that you
12  feel you're losing out and losing all this time.
13      What I will say is ACS as an agency, yes,
14  you're right, they're damned if they do and they're
15  damned if they don't.  If they don't take the child and
16  the child ends up being harmed, they're on the front page
17  of the New York Post.
18      MR. RODRIGUEZ:  I see.
19      THE COURT:  And if they do take the child, then
20  of course a parent, both parents -- you know again,
21  sounds like you have a terrible situation.  I am not
22  going to try to minimize your situation or I can't roll
23  back the clock and go back to the point in time that you
24  and the mother of the child started having these
25  difficulties because there's a whole lot.  It's not just

5

Proceedings

1    what you're bringing here.  So I'm trying to be real with
2    you here to say the only thing that's going forward in
3    this court is your case against Leslie Dunn and your case
4    against Savage who you say punch to you.
5            MR. RODRIGUEZ:  No --
6            THE COURT:  The other way around?
7            MR. RODRIGUEZ:  Yeah.
8            THE COURT:  Dunn punched you?
9            MR. RODRIGUEZ:  Vice versa.  Yeah.
10           THE COURT:  And Dunn's a woman, right?
11           MR. RODRIGUEZ:  Yes.  They're both women.
12           THE COURT:  Okay.
13           MR. RODRIGUEZ:  Detective Savage is a female as
14    well.
15           THE COURT:  I didn't know that.
16           MR. RODRIGUEZ:  Yeah.
17           THE COURT:  And so I just want you --
18           MR. RODRIGUEZ:  Just to clarify.
19           THE COURT:  I just want you to be clear on
20    what's going forward because I do hear your pain and I
21    know it's real that you want your child to be well and
22    you want to have a good relationship with your child and
23    you want me to fix this situation.  As you said, you
24    wouldn't have brought it to court.  Somebody needs to
25    make it stop.  But I don't have that power, sir.  The

6

Proceedings

1  Court doesn't have that power.  It's not the family

2  court.  I'm not the one who gets to say what the

3  visitation, custody situation is going to be between you

4  and the mother of the child.  And so I want to be real

5  with you so that you understand that.  Okay?

6         The reason why I called today's conference is

7  because they were asking for me to force you, compel you

8  to sign a 160.50 release which means that any of the

9  cases that were dismissed against you that they can get

10  the records for it.  And whereas I understand you have no

11  trust and no love for any of these defendants, sometimes

12  for the city to be able to respond to a complaint that's

13  been filed against somebody who works for a city agency,

14  they need to see the underlying records and you need to

15  see the underlying records because otherwise you won't

16  know exactly what led to the situation that brings you to

17  court.

18         But I didn't want to just put out an order

19  directing you to do something without giving you the

20  chance to be in court today because I do understand this

21  is from your heart.  This is not something you're making

22  are.  This is real.  This is going on for you.  And I

23  feel for you, sir.  But I want you to understand even if

24  I feel for you as a parent and as a person in the world,

25  I can't fix the ACS.

7

Proceedings

1          MR. RODRIGUEZ:  Yeah, I know.

2          THE COURT:  I want you to be clear.  Okay?  And

3   as much as -- your child is now 12 it looks like, right?

4          MR. RODRIGUEZ:  11.

5          THE COURT:  11.  And I don't know how to fix or

6   make up for time you've lost with the child.  There is no

7   court, there's no amount of money.

8          You still are with your mom, right?  Your mom's

9   involved in this somehow?  No, it's her mom?  The

10  grandmother on the other side?

11         MR. RODRIGUEZ:  Yeah, maternal grandmother.

12         THE COURT:  Because you need some family

13  support here too, sir.  This is too much for you to be

14  just going --

15         MR. RODRIGUEZ:  I have support.  I have a great

16  family.

17         THE COURT:  Okay.

18         MR. RODRIGUEZ:  I come from a good home.

19         THE COURT:  Okay, good.

20         MR. RODRIGUEZ:  Yeah.  I'm just here to express

21  myself and let my knowledge and wisdom on --

22         THE COURT:  Well, but I want you to be clear

23  about what you can fix and what you can't.  When you say

24  defamation, and I hear you, but this is a federal court

25  and you're bringing a civil rights case.  A civil rights

8

Proceedings

1   case is not a defamation case.  Again, I do understand

2   that they put you on a registry but you got yourself off

3   the registry.  So I have little bits and pieces of what

4   you're talking about.

5                 MR. RODRIGUEZ:  Mm hm.

6                 THE COURT:  But I need you to be clear what can

7   and can't happen here because you're only bringing the

8   case, everything else has been dismissed by the district

9   judge here, you're only bringing the case against Leslie

10  Dunn and Detective Savage.

11                MR. RODRIGUEZ:  Okay.

12                THE COURT:  That's it.

13                MR. RODRIGUEZ:  Yes, based on the arrest.

14                THE COURT:  Yes.

15                MR. RODRIGUEZ:  Yeah.

16                THE COURT:  But I want you to know it's not

17  going to fix the whole situation with ACS.

18                MR. RODRIGUEZ:  No, no, no.  I'm just here

19  to --

20                THE COURT:  I understand.  You're standing up

21  for yourself because you don't believe they're doing what

22  is right and that they violated your constitutional

23  rights.

24                MR. RODRIGUEZ:  Yes.

25                THE COURT:  But one punch by Dunn --

9

Proceedings

1          MR. RODRIGUEZ:  Yeah.

2          THE COURT:  -- that's what this is about, that

3   she punched you --

4          MR. RODRIGUEZ:  My stomach, yes.

5          THE COURT:  Yes.  And then the Detective

6   Savage, it's about an arrest that ended up being

7   dismissed.

8          MR. RODRIGUEZ:  Yeah.

9          THE COURT:  That's what the case is about.

10          MR. RODRIGUEZ:  Yes.

11          THE COURT:  So could I hear, Mr. Lai, why you

12   think you need these 160.50 releases?  Because I'm not

13   sure you need them for both of these cases.

14          MR. LAI:  Yes.

15          THE COURT:  You stand when you address the

16   Court.  Thank you.

17          MR. LAI:  Yes, your Honor.  Right now the city

18   needs the records, the 160.50 releases to access

19   plaintiff's arrest records.  As --

20          THE COURT:  You don't get a blank check to get

21   all of his arrest records.  This is specific to, you

22   know, when he says he was arrested.  So it appears to

23   relate to the January 5, 2021 arrest.  I think that's

24   what this relates to.

25          MR. RODRIGUEZ:  Yes.

10

Proceedings

1        THE COURT:  I don't know why you would ask for

2   releases for any other dates.  There was an 8/13/2021

3   where ACS withdrew a neglect proceeding in family court.

4   And on September 10, 2021 in the SVU case, that case was

5   withdrawn for insufficient evidence.

6        And so I think that that 9/10/2021 might have

7   related to the 1/5/2021 arrest.

8        MR. LAI:  Yes.

9        THE COURT:  So that's the only one that I would

10   see that in order to respond -- because you believe that

11   was Detective Savage involved in that arrest?

12        MR. LAI:  She was, yes.  That's who made the

13   arrest.

14        THE COURT:  So when you're asking for 160.50

15   releases, I don't know how many times Mr. Rodriguez has

16   been arrested, but that's none of my business.  This is

17   about a particular case.  And if you're asking for

18   somebody to sign something to release their records when

19   the law protects their records because the charges were

20   dismissed against them, you can understand how he would

21   be a little bit reluctant to want to sign something

22   especially if you're asking for more than the arrest that

23   is at hand.

24        MR. LAI:  Your Honor, I believe that I

25   specifically, in my communications with the plaintiff,

11

Proceedings

1  that I referenced the January 5th arrest and then the end

2  of --

3          THE COURT:  You asked for two separate arrest

4  releases.

5          MR. LAI:  Yes.

6          THE COURT:  Why?

7          MR. LAI:  Because there's the January 5th

8  arrest that's referenced in the complaint and at the end

9  of the complaint he then thereafter references a prior

10 arrest from a couple of months ago and I don't know what

11 the significance is of that prior arrest.

12         THE COURT:  But if it's not part of what his

13 complaint has alleged against either of these two

14 defendants, then we're not necessarily going to have to

15 delve into the facts of that arrest.  If there were

16 allegations against these two defendants regarding that

17 arrest, so show me where it is in his complaint.

18         I do see that, "Also note NYPD also made a

19 previous arrest three to four months on domestic

20 violence, harassment before the SVU case wherein I

21 surrendered and I was released through the back door of

22 the Manhattan courthouse as that case was declined

23 prosecution."  Is that what you're talking about?

24         MR. LAI:  Yes, your Honor.

25         THE COURT:  But if that doesn't relate to

12

Proceedings

1    Savage and that doesn't relate to Dunne, then we don't

2    have anything to do with that.

3              MR. LAI:  I understand.  Based on plaintiff's

4    complaint, that's not clear to me at this time.

5              THE COURT:  Again, I'm not going to -- Mr. Lai,

6    I don't think I've ever had you before me, so you might

7    be new in the office.  Especially when it's a pro se

8    litigant who's going through a whole lot with a city

9    agency, I'm not going to force him to sign releases for

10   more than what is at issue in the pled complaint I have,

11   not in what could become a new part of the complaint.

12   But he's telling me that he also made -- that there was a

13   previous arrest and that he was let out a back door.  I

14   don't know when that happened.  I don't know who did

15   that.  I'm not releasing records on the basis of that

16   sort of statement.

17             MR. LAI:  I understand, your Honor.  My point,

18   and I think that I may be, not be able to, I'm not

19   communicating properly is I just wanted to see if

20   plaintiff would be able to clarify whether he's alleging

21   that that arrest pertained to Dunn and Savage.

22             THE COURT:  Did it?

23             MR. RODRIGUEZ:  No.

24             MR. LAI:  Okay.  Sorry.

25             THE COURT:  So then we have the answer.

13

Proceedings

1          MR. LAI:  Thank you.

2          THE COURT:  But Mr. Lai, I'm not trying to

3   castigate you in any way.  I'm just trying to say, and

4   Mr. Rodriguez you have to hear this, Mr. Lai is not part

5   of any of the things that are going on for you.  He

6   represents the defendants.  That's his job.  He's part of

7   the Office of the Corporation Counsel, but he has not

8   made any of these events happen for you.  So he'll treat

9   you with dignity and respect and you treat him with

10  dignity and respect.

11         And again, he's just trying to do his job.  He

12  probably has, I'll take a guess, 40 cases that he's

13  working on at any one time.  You're one of them.  He

14  doesn't want to get in trouble with the Court so he's

15  trying to do the job to the best of his ability.  But he

16  is not part of what you're alleging is going on with ACS

17  even though he may represent Detective Savage, what a

18  name for a detective, and Dunn.  Okay?  Do you understand

19  that, sir?

20         MR. RODRIGUEZ:  Yes, I understand.

21         THE COURT:  Okay.  So did you bring a release

22  for the other date, the date that he was arrested that is

23  at issue in this complaint, the 1/5/2021 arrest?

24         MR. LAI:  Because it's sealed, I don't have

25  access to the independent arrest information but I do

14

Proceedings

1   have a blank release where we can complete it and

2   indicate that it's for that arrest.

3          THE COURT:  So this is the problem, Mr.

4   Rodriguez.  Before we get the records, they're not going

5   to be able to respond to the complaint because they don't

6   have access because they're sealed.

7          MR. RODRIGUEZ:  Okay.

8          THE COURT:  And if you unseal them, it will

9   only be for the purpose of this litigation.  You'll get

10  copies of what they get and they will also then be able

11  to respond to the case.  Do you understand?

12         MR. RODRIGUEZ:  Yes, I understand.

13         THE COURT:  So in past, sir, Mr. Lai, we have

14  been able to get docket numbers at least to put on

15  releases even though you may not have everything else.

16  So I don't really understand why -- there usually is a

17  booking number.  Maybe you don't have everything but it's

18  not a completely blank release.  And especially when I'm

19  telling Mr. Rodriguez that I am interested in him

20  releasing these records so that I don't have to force him

21  to release them, I want him to be able to trust that

22  we're going to abide by, you know, the narrow claims that

23  he's making.

24         MR. LAI:  I actually have the docket number if

25  you want me to say it on the record.

15

Proceedings

1      THE COURT:  Oh, that's good.  So what I would

2  like to do is after this conference is over, my law clerk

3  is a notary so she could notarize this unless Mr. Miller

4  is also a notary.

5      MR. MILLER:  No, your Honor.

6      THE COURT:  Okay.  So generally releases need

7  to be notarized.  I will have them -- do they have an

8  email address for you, sir?

9      MR. RODRIGUEZ:  Yes, they have my emails, yeah,

10  both of them.

11      THE COURT:  Okay.  So after they get back to

12  the office, I'll have them send you a copy of your

13  release that you've notarized so you'll have a copy for

14  your records.

15      MR. RODRIGUEZ:  Okay.

16      THE COURT:  It doesn't get filed with the

17  Court.  They then file that with the state court.  And

18  then they get access to the records related to the

19  1/5/2021 arrest.

20      MR. RODRIGUEZ:  Okay.

21      THE COURT:  Once they get those records,

22  they'll send you a copy of those records.

23      MR. RODRIGUEZ:  Okay.

24      THE COURT:  Listen, anything they send you, you

25  may think there are things that are wrong with it.  Keep

16

Proceedings

1   one copy in pristine shape.

2           MR. RODRIGUEZ:  Okay.

3           THE COURT:  Don't write all over it and circle

4   it --

5           MR. RODRIGUEZ:  Yeah.  No.

6           THE COURT:  -- and put notes.

7           MR. RODRIGUEZ:  Right.

8           THE COURT:  If you want to do that, make a

9   separate copy.

10          MR. RODRIGUEZ:  Okay.

11          THE COURT:  And keep these papers, I know you

12  have a lot of other papers because you gave us a lot of

13  these papers, the keep these papers about what has been

14  filed in this action separate so that you have a court

15  file that you're creating for yourself.  Okay?

16          And I do want you to understand you're not the

17  only person I've ever had who has a child that is in a

18  storm of ACS and you and the mother have not seen eye to

19  eye for some time it looks like.  And so it's one or both

20  of you feuding with, as I say, the child is in the

21  crossfire.  And all I can say to you is do your best to

22  stay out of that crossfire.

23          MR. RODRIGUEZ:  Yeah.

24          THE COURT:  And that will in some instances

25  calm things down.  You go to family court but you don't

17

Proceedings

1    try to get the mother and the mother doesn't try to get

2    you.

3                MR. RODRIGUEZ:  Yeah.

4                THE COURT:  You understand what I'm saying?

5    All this about Hennessey and guns and all of the

6    allegations in the complaint, it's you trying to hurt the

7    mother, the mother trying to hurt you.  Who gets hurt?

8    The child.

9                MR. RODRIGUEZ:  Yeah, (indiscernible).

10               THE COURT:  Okay?  And I'm not trying to say I

11   know better because I don't know that you're trying to

12   hurt anybody, but I have in my time seen a lot of cases

13   where ACS, despite them doing what they think is the

14   best, it is the child that really ends up suffering.

15               So to the extent that you're willing to listen

16   to me, try to stay in your own lane, doing well in

17   whatever your job is, do well in whatever your family

18   life is, and your child will come back to you that way.

19               MR. RODRIGUEZ:  I know.

20               THE COURT:  Okay?  So other than getting the

21   160.50 release for that January 5, 2021 arrest, was there

22   anything else we could accomplish here today?  Because

23   what I want is for you to be able to answer.  Are you

24   going to be able to accept service for Dunn?

25               MR. LAI:  No.  Wait --

18

Proceedings

1        THE COURT:  Savage has been served and his

2   answer is due today.

3        MR. LAI:  Yeah.  Assuming that plaintiff

4   completes the release for the arrest records, I'd be

5   requesting 60 days to ensure that I have enough time to

6   get the records and to coordinate meeting with Dunn who

7   I've already reached out to and spoken to to answer --

8        THE COURT:  Mr. Lai?

9        MR. LAI:  Yes?

10       THE COURT:  It's not going to happen that you

11  get 60 days.

12       MR. LAI:  Okay.

13       THE COURT:  Do you know how much time you get

14  on a civil summons in federal court?

15       MR. RODRIGUEZ:  21?

16       THE COURT:  20 days.  That's what you get on a

17  civil summons.  Why would I be giving somebody three

18  times as much time?  Okay?  You have your burden.  I

19  understand that.  It's not easy to get records.  I get

20  it.  And I will stay the answer of Savage.  But I want

21  Dunn and Savage to respond and I don't know whether or

22  not we have an address for Dunn to serve or whether that

23  has happened.  Let me see.  Summonses were reissued for

24  the defendants on March 7th.  On March 20th, the summons

25  was returned executed for Savage which means the answer

19

Proceedings

1   is due today.  I'll take your oral motion to stay that,

2   but I want Dunn, who also was served, because we got an

3   extension of time to provide service addresses at

4   February 21, 2024.  That was your request in February.

5   And then we reissued the summonses on March 7th to the

6   addresses you provided.

7            MR. LAI:  Yes.  One moment, your Honor.

8                 (Pause in proceedings)

9            MR. LAI:  Your Honor, we provided the address

10  for Leslie Dunn on Docket entry 21 on March 4, 2024.  And

11  although the docket does not indicate that Dunn was

12  served, upon information and belief, we believe she was.

13           THE COURT:  Okay.  So what I want you to do is

14  I want you to go ahead and get these records.  I'll give

15  you 30 days from tomorrow to respond on behalf of both

16  defendants now that we've served both defendants.

17           So just for your information, Mr. Rodriguez, so

18  the city represents police officers, correction officers,

19  the ACS workers even though there are no ACS workers in

20  this suit at this point in time.  But it's required under

21  the federal rules that somebody be served with the

22  summons and complaint which was done for you by the

23  United States Marshals because you were granted in forma

24  pauperis.

25           But at first we didn't have the right

20

Proceedings

1   addresses.  That's why the Court ordered them to give us

2   addresses.  We got one of them served.  Now I'm informed

3   that both of them have been served, so I'm setting the

4   time for them to respond to the complaint and I'm setting

5   it from tomorrow which would give them enough time to get

6   these records.

7            MR. RODRIGUEZ:  Yeah.

8            THE COURT:  Okay?  So tomorrow is the 10th.

9   I'm looking at May 10th is a Friday.  Perfect.  So you'll

10  have until May 10th to respond on behalf of both

11  defendants.

12           MR. LAI:  Your Honor, if I may?  I just -- I'd

13  like to respectfully request just 45 days the issue being

14  that I did reach out to Detective Savage who is retired

15  and due to personal issues I might have difficulties

16  scheduling the representation --

17           THE COURT:  I'll give you one more week till

18  the 17th.  If they don't want you to represent them, they

19  have to represent themselves or they default.  Again,

20  they're still on the payroll.  They still get, you

21  know -- it could be a phone conversation.  They don't

22  have to come in.  I'll give you till the 17th to respond

23  on behalf of both of the defendants.  And by that time

24  you'll have gotten the underlying file and you'll Bates

25  stamp it and give a copy to Mr. Rodriguez.

21

Proceedings

1    And as I said, when you get back to your

2    office, you'll send him a scanned copy of the release

3    that he's going to sign today after I come off the bench.

4    Okay?

5        MR. LAI:  Thank you, your Honor.  I'd just like

6    to clarify it was I had made the request due to personal

7    issues that I became aware of when I spoke to Detective

8    Savage.  It wasn't --

9        THE COURT:  Because he's retired.

10       MR. LAI:  Retired and there was scheduling

11   issues that I anticipated and I encountered and I'm

12   working through right now.

13       THE COURT:  Okay.  But Mr. Lai, I want you to

14   hear me.  Just because you represent city employees who

15   frequently are police officers, the federal law provides

16   for 20 days after a summons is served to respond.  I have

17   given you more than that 20 days.

18       MR. LAI:  Yes.

19       THE COURT:  I want you to hear it.  60 days

20   should not be the norm that the Corp. Counsel is asking

21   for.  Your office always asks for 60 days no matter what

22   the situation is.  And this is a case that was brought in

23   November of 2023.  I understand we're just getting it

24   back on track today.  But I'm not interested in just

25   giving extensions of time.  And how many extensions of

22

Proceedings

1    time requests do you think I get every day?

2                MR. LAI:  Yeah.

3                THE COURT:  And how many are from your office?

4                MR. LAI:  I understand, your Honor.  Thank you.

5                THE COURT:  Okay.  Thank you very much.  Okay.

6    So I'm giving you till the 17th to respond.  This again

7    is not the initial conference.

8                Mr. Rodriguez, have you gotten the manual from

9    the court on how to conduct discovery?  There's a manual

10   that if you weren't sent it, I'll get you to pick one up

11   today on your way out.  Did you get it?

12               MR. RODRIGUEZ:  No.

13               THE COURT:  So when you go down to the court

14   clerk's office on the first floor, it has a yellow cover

15   now, but it's a big book.

16               MR. RODRIGUEZ:  Okay.

17               THE COURT:  And there's a whole chapter in it

18   about how to conduct discovery.

19               MR. RODRIGUEZ:  Okay.

20               THE COURT:  I want you to focus though.  This

21   is about a punch and this is about an arrest that the

22   charges were dismissed and they declined prosecution.

23   It's not about everything else that's going on in your

24   life.

25               MR. RODRIGUEZ:  I know.

23

Proceedings

1          THE COURT:  And I can't solve everything else.

2   To the best of my ability, I told you what I think that

3   you need, to just stay clear and let things calm down and

4   let the family court handle things.

5          MR. RODRIGUEZ:  Yes.

6          THE COURT:  Because unfortunately, the more

7   that you try it sounds like the deeper you're going into,

8   you know --

9          MR. RODRIGUEZ:  The hole.

10         THE COURT:  The hole or the web.  I don't know

11  which one.  But you're getting stuck, right?

12         MR. RODRIGUEZ:  Yeah.  I'm seeing nothing

13  happen.

14         THE COURT:  But again, if you have a family

15  that's supportive of you, stay with them.

16         MR. RODRIGUEZ:  Yeah.

17         THE COURT:  Your daughter will come back to

18  you.

19         MR. RODRIGUEZ:  I know for sure.

20         THE COURT:  Okay.  So the 17th they're going to

21  respond.  Once they respond, I'll set an initial

22  conference so that we can talk about discovery.  I'll

23  have my law clerk notarize your release today.  I'll also

24  have them send you a copy of that release.  And if you go

25  down and you go to the clerk's office on the first floor,

24

Proceedings

1  we'll call ahead, and they'll give you a copy of the

2  manual.  Okay?

3              MR. RODRIGUEZ:  Okay.  Yes.

4              THE COURT:  Is there anything else today, Mr.

5  Rodriguez, before we adjourn?

6              MR. RODRIGUEZ:  No, that will be all.

7              THE COURT:  Anything further, Mr. Lai or Mr.

8  Miller>

9              MR. LAI:  One moment, your Honor.  Nothing

10  further, your Honor.

11             THE COURT:  Then thank you very much.  This

12  matter is adjourned and I'll set -- yes, Mr. --

13             MR. RODRIGUEZ:  Sorry.  Would you want the

14  docket number on record or --

15             THE COURT:  It's going to go on the form that

16  you are going to sign with Mr. Lai --

17             MR. RODRIGUEZ:  Yes.

18             THE COURT:  -- so I don't need it.  But he'll

19  need it on that form, sir.  Thank you for asking.  Okay.

20             MR. RODRIGUEZ:  Thank you.

21             THE COURT:  And with that we're adjourned.

22  Thank you.

23                      (Matter concluded)

24                          -oOo-

25

Transcriptions Plus II, Inc.

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **10th** day of **May**, 2024.

*Mary Greco*

Transcriptions Plus II, Inc.